<hr/>

## ATKINSON vs. HEWITT and others.

*January 14 — February 8, 1881.*

*(1) Estoppel by deed: Injunction. (2) Reversal of Judgment: Order to vacate conclusions of law determining questions not in case.*

1. Defendant H., holding an undivided one-eighth of certain land, took a tax deed of an undivided three-fourths of the same land, belonging to another person; and he conveyed said three-fourths to one C., who mortgaged them to plaintiff. When the mortgage was given, there was a large quantity of valuable timber on the land, constituting its chief

value; and H. and his codefendants, who claim under a license from the owner of the other undivided one-eighth, have entered into possession of the land, and cut off most of the timber, and threaten to cut off the remainder. In this action to restrain them from further cutting the timber (to the destruction of plaintiff's security): *Held*, that none of the defendants have any interest in the question whether C.'s mortgage to H. is a valid lien upon an undivided two-thirds (or only an undivided one-eighth) of the land; and that plaintiff is entitled to the injunction sought, especially as C., his mortgagor, is shown to be insolvent.

2. The circuit court refused the injunction, and held, in its conclusions of law filed in the cause, that the tax deed to H. conveyed no title; and that H.'s deed to C., and C.'s mortgage to plaintiff, while purporting to be of an undivided three-fourths, were in law a conveyance of an undivided one-eighth only. C. was not a party to the suit. On reversing the judgment, and directing the entry of a judgment granting the injunction, this court further directs the above conclusions of law to be vacated and expunged from the record, as determining questions not properly in the case.

APPEAL from the Circuit Court for *Clark* County.

This action was brought against *James Hewitt, Randolph McNutt, Robert Christie* and *Edward Carpenter;* and the relief demanded was, that a tax deed issued to *McNutt* be set aside, and that defendants, their agents, etc., be restrained from cutting or removing any timber or trees from the lands described in the said deed until a certain note secured by mortgage of said lands, running to and held by the plaintiff, should be fully paid. The answer of all the defendants disclaimed title under the tax deed to *McNutt*, and alleged, in substance, both as defense and counterclaim, that plaintiff's mortgage, which purported to be of an undivided three-fourths of the land, was a valid lien upon only an undivided one-eighth thereof. The judgment was, in substance, that plaintiff was not entitled to the injunction asked; that said tax deed was void, and was a cloud on plaintiff's title; and that defendants recover of plaintiff the costs of the action. Plaintiff appealed from the judgment, except so much thereof as relates to the tax deed.

Atkinson vs. Hewitt and others.

For the appellant there was a brief by *James O'Neill* and *B. F. French*, and oral argument by *Mr. O'Neill*.

The cause was submitted for the respondents on the brief of *R. J. MacBride*.

ORTON, J. In order to understand the real questions involved in this case, a brief statement of the facts is necessary. On July 22, 1871, one Hiram McNutt, then being the owner of the whole quarter section of land mentioned, deeded one undivided fourth part thereof to one James E. Lindsay and the defendant *James Hewitt*, and said *James Hewitt* thereby became the owner of one undivided eighth part of said quarter section. On June 30, 1876, the said *James Hewitt* took a tax deed of an undivided three-fourths of said quarter, belonging to said Hiram McNutt, on a certificate of the sale thereof for taxes of the year 1873, and he was then also the owner of the tax certificate of the sale thereof for the year 1875. On May 1, 1875, *James Hewitt* quitclaimed said undivided three-fourths, which he held by said tax deed and tax certificate, to one Thomas Chadwick; and on April 10, 1879, said Chadwick executed a mortgage upon said three-fourths to the plaintiff in this suit, to secure the payment of $909.19 in one year thereafter, according to a promissory note then given. On November 28, 1879, said *Hewitt*, having assigned to him the said tax certificate of the year 1875, procured a tax deed to be issued thereon to the defendant *Randolph McNutt*.

When this mortgage was executed, there was a large quantity of valuable pine timber on said land, and the main value of the land consisted of such timber. The defendants entered into the possession of the same, and have cut off most of the timber, and still threaten to cut off and remove the remaining timber. The joint answer of the defendants admits such cutting, and claims the right to do so; and they further admit that the tax deed to the defendant *Randolph McNutt*, of November 28, 1879, is absolutely void, and they claim no

right under it; but they aver and claim that the defendant *Hewitt* had no right to take the tax deed on the three-fourths of the quarter belonging to his co-tenant, Hiram McNutt, he being the owner of an undivided one-eighth. The plaintiff prays for an injunction against the waste, and that the said tax deed to *Randolph McNutt* be declared void. The defendants pray that said mortgage be reformed, and that it be declared to convey only one-eighth, instead of three-fourths of the quarter. On the trial, the parties litigated the questions — *first*, whether the deed of Hiram McNutt to Lindsay and *Hewitt* conveyed any title whatever, it having had no witnesses to its execution; and *second*, whether said *Hewitt* had the right to take and hold as title the tax deed upon the three-fourths interest of Hiram McNutt, his co-tenant; and the judgment of the circuit court is based upon the decision of these two questions, and they were the principal questions discussed on this appeal.

After finding the above facts, the circuit court held, as conclusions of law: *second*, " that the tax deed taken by the said defendant *James Hewitt* conveyed no title to him, and the same was simply a redemption, or payment of the tax;" *third*, " that the quitclaim deed from the defendant *Hewitt* to Thomas Chadwick, purporting to convey to said Chadwick an undivided three-fourths interest in the lands mentioned, was in law a conveyance of an undivided one-eighth interest only;" *fourth*, " that the plaintiff's mortgage, while purporting to be a mortgage of an undivided three-fourths interest in said lands, is in law a mortgage of an undivided one-eighth interest only;" and *fifth*, that the tax deed to *Randolph McNutt* was void. The judgment denies the prayer for an injunction, but adjudges the tax deed to *Randolph McNutt* void.

It will be readily seen that neither of the above questions so litigated and decided, and discussed here, can possibly arise in this case, for none of these defendants are interested in them. As to the defendant *Hewitt*, he certainly had no right

to have his own deed to Chadwick reformed; for, if he is not estopped by that deed, yet he does not claim any right to the three-fourths interest covered by it, and Chadwick is not a party to this suit, and the reformation of that deed and this mortgage as sought by him and his co-defendants, and as finally adjudged, makes the mortgage convey the one-eighth interest that he held by the deed from Hiram McNutt, instead of the three-fourths interest which it purported to convey, and which he now insists he did not own. The defendant *Hewitt* has lost by his prayer, and this finding, the only interest he now pretends to have had, while the plaintiff loses all of the interest that his mortgage pretended or was intended to convey. None of these defendants own or represent the three-fourths interest covered by the mortgage. Before this adjudication cut it off, the defendant *Hewitt* owned one-eighth interest, and the said Lindsay still owns another one-eighth, under which the defendants claim license to cut the timber from the land. It is true that the judgment does not in itself so reform the mortgage, but it is so adjudged in the conclusions of law, and such decision may affect the substantial rights of the plaintiff when he seeks to enforce or foreclose his mortgage.

The only possible question in which any of these defendants have any interest, is, whether they should be enjoined from cutting off the timber from the land to the utter destruction of the plaintiff's mortgage security. It is found by the circuit court, "that the lands are wild, unimproved lands, and of no use for agricultural purposes, but have growing thereon a large amount of pine timber, and that said lands are valuable only for the timber growing thereon, and that the value of the pine timber growing and being thereon is the sum of $1,000;" and "that the defendants were engaged in cutting the pine timber from said lands, as alleged in said complaint, but were so engaged by leave and license of the owner of the undivided seven-eighths interest therein."

It is inexplicable how the circuit court could have found

that the defendants had license to cut timber "of the owner of seven-eighths interest;" for there is no evidence of any such license, or of any license, except a stipulation that the defendant *Hewitt* had leave and license from J. E. Lindsay, one of the grantees in the deed, exhibit E (which is the above deed from Hiram McNutt to *Hewitt* and Lindsay); and "that defendants *Robert Christie* and *Edward Carpenter* were in the employ of said *Hewitt*, so cutting the same." The right to so cut off the timber must be predicated — if on any right — upon this one-eighth interest of Lindsay, and possibly the one-eighth interest of *Hewitt*.

The plaintiff stands here with his rights as mortgagee in three-fourths of the land unquestioned, according to the above view taken of the case, asking for an injunction against those representing the other one-fourth from cutting off all the timber standing upon the whole quarter section, which injunction was refused by the circuit court. It was proved, and found by the circuit court, that Chadwick, the mortgagor, was and is insolvent. It seems to us that a stronger case for an injunction could scarcely be made. The claim that because the defendants represented a one-fourth interest in the land, and were therefore, in a sense, tenants in common with the plaintiff, and, as such tenants, in possession, they had the right to cut off the timber, is utterly frivolous. By the same claim the owners of this one-fourth interest, as tenants in common with the owner of the remaining three-fourths, would have the right to completely oust, disseize and expel their co-tenant so owning the three-fourths interest, and hold adversely to his title, and the evicted co-tenant would have no remedy or right to complain. This case is much stronger than such an one; for here, not only do these defendants claim the right to thus evict the plaintiff, representing, by his mortgage, a three-fourths interest, but, while being thus in unlawful possession of the whole estate by holding adversely to the plaintiff, they threaten to destroy, and are engaged in destroying, its entire value by waste.

The point that some of the defendants were mere trespass-

ers and therefore cannot be enjoined, is not well taken; for it is conceded that they claim to have committed the waste either under title or under license from the owner of a one-eighth interest at least. It may be that in a proper case, when one co-tenant in common threatens to cut off timber from the land to the destruction of its entire value, the injunction should reserve the reasonable right of the defendant to cut off timber proportionably to his interest; but in this case there should be no such reservation, for it appears that the defendants have already taken off nearly all of the valuable timber, and greatly in excess of their just proportion.

On granting a former motion to dissolve an injunction, the defendants were required to give a certain bond of indemnity against unlawful waste. This was virtually admitting the plaintiff's right to injunction, and commuting it, by requiring him to accept security for any damages he might suffer by reason of the waste, and a substitute for his mortgage security, which would be rendered valueless by the waste. *Cline v. Libby*, 46 Wis., 123.

The authorities cited by the learned counsel of the respondents, to the effect that a tenant in common and in possession has the right to the usufruct and reasonable enjoyment of the estate, have no application to a case like this, where the tenant in possession, and those acting under his right, threaten to utterly destroy the value of the estate by stripping the land of all of its growing timber. As before intimated, such waste could no more be justified than the complete expulsion of one tenant in common by another. The following authorities (if any are needed to sustain such an almost self-evident proposition) are abundantly sufficient to show that the injunction prayed for in this case ought to have been granted: The case of *Hawley v. Clowes*, 2 Johns. Ch., 122, is precisely in point, though not as strong a case as this; Freeman on Cotenacy, §§ 223, 514; *Hole v. Thomas*, 7 Ves., 589; *Twort v. Twort*, 16 Ves., 128; *Kimball v. Darling*, 32 Wis., 686; *Fairbank v. Cudworth*, 33 Wis., 358.

This opinion has been extended by the complications arising from the consideration by the circuit court, and the discussion here, of immaterial questions of title, when the single question of the plaintiff's right to an injunction is alone presented by the record.

*By the Court.*— That part of the judgment of the circuit court appealed from is reversed, and the cause remanded with direction to that court, *first*, to enter an order to vacate and expunge from the record the second, third and fourth conclusions of law; *second*, to enter judgment granting the injunction as prayed for in the complaint.